IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| LA'QUASHA DIXON, | ) | CIVIL ACTION NO. __ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **COMPLAINT** |
| | **)** | (Jury Trial Demanded) |
| ALLEN UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## INTRODUCTION

1.      Plaintiff brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C., §§ 2000e – 16(c) (hereinafter "Title VII").

## PARTIES

2.      Plaintiff La'Quasha Dixon is a citizen and resident of Richland County, South Carolina, who was employed by the Defendant in Richland County, South Carolina.

3.      Defendant, Allen University (hereinafter "Allen" or "Defendant"), is properly sued under 42 U.S.C., §§ 2000e – 16(c).  Defendant is an "employer" engaged in an industry affecting commerce within the meaning of 42 U.S.C. §2000e, and does now employ, and at all times relevant did employ, more than 500 employees.

## JURISDICTION AND TRIAL BY JURY

4.      Plaintiff has exhausted her administrative remedies. This suit is timely filed within 90 days of the receipt of the Notice of Right to Sue final decision.  The Right to Sue letter was issued on April 15, 2026.  That letter is attached hereto as Exhibit 1. This complaint is filed within

**1**

90 days of the date of the decision.

5.     This Court's jurisdiction arises under 42 U.S.C. §2000e-2 and under 28 U.S.C. §1331 and §1332.  Venue is proper in the Columbia Division of the United States District Court for the District of South Carolina pursuant to 28 U.S.C. § 1391, as Defendant conducts business in this district and a substantial part of the events giving rise to this action occurred in this district. Plaintiff requests a trial by jury of all matters which may be submitted to a jury.

## STATEMENT OF FACTS

6.     Plaintiff properly exhausted her administrative remedies and has commenced this action within ninety (90) days of receipt of the Right to Sue letter. Plaintiff incorporates by reference the facts relayed in the charges of discrimination made by Plaintiff.  The charge is attached hereto as Exhibit 2.  Plaintiff incorporates by reference into this Complaint, as if repeated here verbatim, the document and the allegations therein.  At all times during the course of her employment with Defendant, Plaintiff reported to the proper agents of Defendant the unlawful activities of which she complains herein.  Defendant did not take any meaningful actions to assist Plaintiff by remedying the complaints. Rather the defendant — through its management and human resource personnel — engaged in activities designed to create pretexts for the unlawful activities of which Plaintiff complained, created a hostile working environment, and subsequently terminated her in retaliation for her complaints.  Defendant and its agents participated in other unlawful activities, in violation of the laws of the State of South Carolina as well.

7.     On August 20, 2024, Plaintiff signed an employment contract with Defendant Allen University. Plaintiff's employment with Defendant began on August 26, 2024. Plaintiff was employed as Marketing and Development Director, and Dr. Dub Taylor ("Taylor" hereinafter) was

**2**

Defendant's Vice President of Institutional Advancement and served as Plaintiff's direct supervisor.

8.      Beginning in early September 2024, Dr. Taylor began making repeated comments about Plaintiff's appearance, clothing, and body.

9.      Dr. Taylor's conduct toward Plaintiff became personal rather than professional.

10.  In early September 2024, Dr. Taylor told Plaintiff she could have all of his money.

11.  When Plaintiff declined, Dr. Taylor responded that she was "wearing him down."

12.  In mid-September 2024, Plaintiff bumped her knee.

13.  Dr. Taylor asked if he could rub Plaintiff's knee. Plaintiff said no.

14.  Dr. Taylor responded "Nah, I don't think you can handle it Ms. Dixon" while grabbing himself, in the area of his crotch, sexually.

15.  In September 2024, Dr. Taylor invited Plaintiff to travel to Charlotte, spend the weekend with him, and go shopping with him. Plaintiff refused Dr. Taylor's invitation.

16.  In September 2024, during a work-related drive discussing university business and development projects, Dr. Taylor joked about taking Plaintiff to an hourly hotel.

17.  Plaintiff found Dr. Taylor's comment inappropriate and uncomfortable.

18.  This became the last lunch outing Plaintiff attended with Dr. Taylor.

**3**

19. Throughout September 2024, Dr. Taylor engaged in a pattern of conduct that included sexual comments, comments about Plaintiff's clothing and body, lip biting, grabbing himself, and stomping his foot while making sexual remarks.

20. Dr. Taylor used an alter ego "Ni*** Dub" before making vulgar comments to Plaintiff.

21. On September 28, 2024, Plaintiff attended an Allen University football game wearing an Allen t-shirt and tennis skirt.

22. On October 1, 2024, in Dr. Taylor's office, Dr. Taylor discussed Plaintiff's football game attire.

23. During this meeting, Dr. Taylor got down on his knees and crawled across the floor.

24. Dr. Taylor grabbed Plaintiff's foot and rubbed Plaintiff's leg without Plaintiff's consent while making comments about proposing to her.

25. During the same October 1, 2024 meeting, Dr. Taylor rolled toward Plaintiff in his chair.

26. Dr. Taylor whispered to Plaintiff "You gone be my bad b**** walking into the game." Plaintiff responded "You wish." Dr. Taylor then responded "There is nothing that could ever come between us." An audio recording of this incident exists.

27. In early October 2024, Dr. Taylor repeatedly warned Plaintiff "Don't be one of THEM." Plaintiff understood this reference to mean women who previously worked under Dr. Taylor and either left or were terminated.

28. In early October 2024, Dr. Taylor cornered Plaintiff outside her office.

29. Dr. Taylor stated "I hope you are mature enough and professional enough not to share any of the things I've said to you." Dr. Taylor also stated "We gone be together for a long time."

30. In early October 2024, Dr. Taylor boasted about Equal Employment Opportunity Commission (EEOC) complaints, lawsuits, and allegations involving women.

31. Dr. Taylor stated that despite complaints he was "still standing." Plaintiff understood Dr. Taylor's statements as intimidation.

32. On October 11, 2024, at Allen University's office, Yvette Salters, a female employee of Defendant who, upon information and belief, maintained a romantic and/or intimate relationship with Dr. Taylor, confronted Plaintiff.

33. Plaintiff was publicly berated, humiliated, and accosted in front of others. Dr. Taylor defended Salters and stated "Ms. Salters ain't going no damn where."

34. Dr. Taylor apologized to Salters for interrupting her day.

35. After the meeting on October 11, 2024, Plaintiff attempted to discuss what occurred with Dr. Taylor.

36. Dr. Taylor touched Plaintiff's wrist and stated "Calm your pretty self down" and "We gone be together for a long time."

37. In mid-October 2024, Plaintiff reported the Salters incident to Defendant's Human Resources department.

38. Human Resources informed President Ernest McNealey of Plaintiff's complaint.

**5**

39. During the week of approximately October 15-18, 2024, a meeting was held with President McNealey, Brittany Holloman, Yvette Salters, and Plaintiff.

40. During this meeting, President McNealey stated "It's not like anybody took anybody's boyfriend" while discussing the dispute.

41. The issue was minimized rather than investigated. Plaintiff's complaints were brushed aside with no consequences for the bad actors or protection for Plaintiff. Rather than initiating a meaningful investigation, President McNealey characterized the dispute as a personal disagreement involving romantic jealousy.

42. In late October 2024, Plaintiff separately informed President McNealey about sexual harassment, hostile work environment, treatment by Dr. Taylor, and problems involving Salters.

43. Following Plaintiff's complaints, President McNealey changed Plaintiff's reporting structure.

44. Plaintiff began reporting through the President's Office and Chief of Staff rather than directly through Dr. Taylor. However, this action had little to no effect on the work environment for Plaintiff.

45. Following Plaintiff's complaints, Dr. Taylor's treatment of Plaintiff worsened. Work became increasingly difficult for Plaintiff.

46. Plaintiff was caught between leadership factions. Dr. Taylor was excluded from various meetings.

47. Plaintiff was often used as an intermediary between leadership and Dr. Taylor.

**6**

48. On November 26, 2024, leave records reflected that Plaintiff had eight days available for her use and that she had used six days and that she had two days unpaid leave on her record.

49. Plaintiff's absences were approved.  After her complaints, Defendant used the leave time she took against her.

50. On December 6, 2024, Defendant terminated Plaintiff's employment.

51. The termination decision was communicated by Dr. Taylor. Defendant's stated reason for termination was excessive time off.

52. The stated reason is pretextual, false, and retaliatory.

53. On December 11, 2024, Plaintiff submitted a written appeal raising concerns regarding leave calculations, retaliation, gender discrimination, and hostile work environment.

54. On December 13, 2024, Defendant's Human Resources department instructed Plaintiff to submit a grievance specifically regarding sexual harassment.

55. On December 18, 2024, Plaintiff filed a comprehensive written grievance detailing sexual harassment, physical touching, retaliation, hostile work environment, witnesses, and audio recordings.

56. Plaintiff began therapy on December 22, 2024, shortly after her termination.

57. Documented therapy contacts continued from December 23, 2024 through February 20, 2025.

7

58. In January 2025, clinical surveys reflected severe anxiety scores and severe depression frequency scores.

59. From December 2024 through May 19, 2026, Plaintiff submitted 168 job applications and received 19 interview opportunities.

60. As of May, 2026, Plaintiff's estimated lost wages were approximately $101,452.

61. Plaintiff has experienced ongoing unemployment, mortgage delinquency, and educational interruption as a result of her termination.

63. The misconduct of Dr. Taylor, President McNealey, Ms. Salters and other agents of the Allen University constitutes the misconduct of the Defendant, was ratified by the Defendant, and was encouraged and protected by the Defendant's management and human resources employees. Defendant's complete knowledge of Dr. Taylor's predatory and discriminatory nature is entirely evident.  An unlawful hostile environment was created and maintained which caused severe emotional distress and humiliation to Plaintiff.  Plaintiff was retaliated against for the several protected activities in which she engaged.  That retaliation and emotional distress continued after Plaintiff's employment ended. Upon information and belief, Allen University had prior notice of complaints regarding Dr. Taylor's conduct toward female employees before Plaintiff's employment. Multiple female employees had previously left positions under Dr. Taylor's supervision. Plaintiff was informed by senior administrators that concerns regarding Dr. Taylor's treatment of women were known within the institution before Plaintiff's hiring.

**FOR A FIRST CAUSE OF ACTION**
**(Quid Pro Quo/Hostile Work Environment in Violation of Title VII)**

**8**

64.     Plaintiff reavers all foregoing paragraphs as if set forth fully herein.

65.     Dr. Taylor, with the constructive knowledge of the Defendant, conditioned Plaintiff's employment on her being available for sexual favors.  Defendant discriminatorily failed to protect Plaintiff from the wrongful acts of Dr. Taylor and others in violation of 42 U.S.C. §§ 2000e-3.

66.     Defendant discriminatorily failed to provide Plaintiff with a safe and harassment free workplace in violation of 42 U.S.C. §§ 2000e-3, instead allowing harassers to consistently harm Plaintiff.

67.     By acts and practices alleged above, and by other and related acts and practices, Defendant has willfully deprived Plaintiff of equal employment opportunities guaranteed by law by unlawfully discriminating against Plaintiff on account of her gender, with respect to the terms, conditions and privileges of her employment, including depriving her of employment opportunities and a safe and harassment free working environment; all in violation of Title VII of the Civil Rights Act of 1964.

68.     The actions and omissions of the Defendant were malicious and in bad faith and proximately caused actual and punitive damages to the Plaintiff in an amount to be determined at trial.

**FOR A SECOND CAUSE OF ACTION**
**(Retaliation in Violation of Title VII)**

69.     Plaintiff reavers all paragraphs as if set forth fully herein.

70.     By acts and practices alleged above, and by other and related acts and practices, Defendant has willfully retaliated against Plaintiff by taking adverse and harmful actions against

Plaintiff for her lawful and protected reports of harassment and discrimination, as well as for her participation in investigations into the complaints against Dr. Taylor and Ms. Salters; all in violation of Title VII of the Civil Rights Act of 1964.

71.     The actions and omissions of the Defendant were malicious and in bad faith and proximately caused actual and punitive damages to the Plaintiff in an amount to be determined at trial.

### FOR A THIRD CAUSE OF ACTION
### (Negligence, Gross Negligence, Negligent Supervision/Retention)

72.     Plaintiff reavers all paragraphs as if set forth fully herein.

73.     Defendant had a duty to act reasonably in hiring, training, and retaining employees, specifically Dr. Taylor, and to promulgate and enforce rules and regulations to ensure its employees were reasonably safe.

74.     Defendant was negligent in the hiring, supervision and retention of Dr. Taylor, which negligence caused or contributed to the injuries of Plaintiff.  Defendant was negligent in the supervision of Ms. Salters, which negligence caused or contributed to the injuries of Plaintiff.

75.     Defendant had a duty to act reasonably in investigating complaints of *quid pro quo* harassment and hostile work environment and to take reasonable steps to prevent discriminatory and retaliatory acts against Plaintiff.

76.     Upon information and belief, Defendant had notice before Plaintiff's employment of complaints by other female employees regarding Dr. Taylor's inappropriate conduct and failed to take reasonable corrective action. But/for Defendant's negligently retaining Dr. Taylor after multiple complaints by other female employees of Defendant regarding outrageous behavior and

negligently supervising Ms. Salters, Plaintiff's harm would have been lessened.

77.     Defendant was negligent, grossly negligent, careless, reckless, willful and wanton in continuing to employ Dr. Taylor, giving him access to the Plaintiff, and that conduct directly and proximately caused the injuries and losses of Plaintiff as set forth herein.  Defendant was negligent in not recognizing the relationship between Ms. Salters and Dr. Taylor, and that conduct directly and proximately caused the injuries and losses of Plaintiff as set forth herein.

## FOR A FOURTH CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress)

78.     Plaintiff reavers all paragraphs as if set forth fully herein.

79.     Defendant has intentionally caused emotional distress to Plaintiffs by the foregoing acts that occurred *after* the end of Plaintiff's employment.

80.     Agents of the Defendant spread lies about Plaintiff internally and externally that were designed to ruin her.  Such conduct by the Defendant was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as utterly intolerable in a civilized society.

81.     By the foregoing acts of the Defendant, the Plaintiff has suffered severe emotional distress, causing Plaintiff damages, both actual and exemplary and in an amount to be determined by a jury.

## FOR A FIFTH CAUSE OF ACTION
### (Defamation)

82.     Plaintiff reavers all paragraphs as if set forth fully herein.

83.     Upon information and belief, Defendant has made false and defamatory statements about Plaintiff, including false statements about Plaintiff's unfitness in her business or profession,

which is defamation *per se*.

84.     Defendant disseminated knowingly false information about Plaintiff that was published to third parties, the extent of which has not been fully realized, with the intent to harm the Plaintiff.

85.     Additionally, Plaintiff's termination plainly insinuated unfitness in her business or profession, which constitutes defamation *per se*.

86.     Defendant did so negligently, recklessly, and/or with actual malice.

87.     As a proximate result, Plaintiff has suffered both special and general damages, and is additionally entitled to punitive damages, in an amount to be determined at trial.

**FOR A SIXTH CAUSE OF ACTION**
**(Assault and Battery)**

88.     Plaintiff reavers all paragraphs as if set forth fully herein.

89.     At all relevant times, Dr. Dub Taylor intentionally engaged in unwanted physical contact with Plaintiff.

90. On or about October 1, 2024, while acting as Plaintiff's supervisor and while Plaintiff was performing her employment duties, Dr. Taylor got onto the floor of his office, crawled toward Plaintiff, grabbed Plaintiff's foot, and rubbed Plaintiff's leg without her consent.

91. Plaintiff neither invited nor consented to such physical contact.

92. Dr. Taylor's actions were intentional, offensive, harmful, and unwelcome.

93. A reasonable person would regard such contact as offensive and a violation of personal dignity.

94. In addition to the physical contact, Dr. Taylor repeatedly engaged in sexually charged

**12**

conduct, propositions, comments, gestures, and statements that caused Plaintiff to reasonably fear additional unwanted physical contact.

95. Dr. Taylor's conduct placed Plaintiff in reasonable apprehension of imminent harmful or offensive contact.

96. The actions of Dr. Taylor constituted battery under the laws of South Carolina.

97. The actions of Dr. Taylor further constituted assault under the laws of South Carolina.

98. Upon information and belief, Defendant Allen University knew or should have known of prior complaints and concerns regarding Dr. Taylor's treatment of female employees and nevertheless retained him in a supervisory position with authority over Plaintiff.

99. Defendant Allen University subsequently ratified and condoned Dr. Taylor's conduct by failing to conduct a meaningful investigation, minimizing Plaintiff's complaints through senior management, failing to discipline Dr. Taylor, and permitting him to continue exercising authority over Plaintiff after receiving complaints concerning his conduct.

100. As a direct and proximate result of the assault and battery, Plaintiff suffered humiliation, embarrassment, emotional distress, mental anguish, loss of enjoyment of life, and other damages in an amount to be determined by the trier of fact.

101. The conduct described herein was willful, wanton, reckless, and undertaken with conscious disregard for Plaintiff's rights, thereby entitling Plaintiff to an award of punitive damages.

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment against the Defendant, as follows:

**13**

1.      For all relief available under Title VII;

2.      For actual, exemplary, special, and punitive damages for Defendant's violations of state law;

3.      For compensatory damages;

4.      For a declaratory judgment that the Defendant violated rights secured to the Plaintiff by Title VII;

5.      For the Plaintiff's costs and a reasonable attorney's fees, pursuant to all applicable provisions of law, and for such other and further relief as the Court deems proper, just and equitable.

GIBBS & HOLMES


__s/Tim Lewis__
Allan R. Holmes (ID#1925)
Timothy O. Lewis (ID# 9864)
Allan Riley Holmes, Jr. (ID#11115)
171 Church Street, Suite 110
Post Office Box 938
Charleston, S.C.  29402
(803) 722-0033

ATTORNEYS FOR THE PLAINTIFF

Charleston, South Carolina

June 17, 2026

**14**